UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

---

JAMAL JABER,

                Plaintiff,

-vs-

CHRISTIAN McGOWAN,

                Defendant.

DECISION AND ORDER
25-CV-0782-MAV

---

Plaintiff Jamal Jaber commenced this action on August 25, 2025, seeking $1,500,000 for injuries he sustained when he was struck by the moving propeller of a boat owned by the Defendant. ECF No. 1. After Defendant failed to answer or otherwise respond to the complaint, Plaintiff obtained an entry of default in December 2025. ECF No. 5. Now before the Court is Plaintiff's application for a default judgment. ECF No. 6. For the reasons stated below, Plaintiff's motion is granted.

## BACKGROUND

On July 27, 2024, Plaintiff was struck by the moving propeller of Defendant's boat on Chautauqua Lake, which is located entirely within Chautauqua County, New York. ECF No. 1 ¶ 8. The accident occurred "wholly and solely" as a result of the careless and negligent operation of the boat, which was being operated with the express or implied permission of Defendant. *Id.* ¶¶ 11–13. Plaintiff suffered injuries that were severe and permanent, and have caused and will continue to cause pain and suffering. *Id.* ¶ 14.

1

Plaintiff filed the complaint in this action on August 25, 2025. ECF No. 1. Summons was issued on August 26, 2025, and Plaintiff filed a certificate of service affirming that Defendant was personally served on October 20, 2025. ECF Nos. 2–3. On December 4, 2025, Plaintiff requested an entry of default from the Clerk of Court, and an entry of default was docketed on December 5, 2025. ECF Nos. 4–5. The Clerk's Office mailed the entry of default to Defendant. ECF No. 5.

On December 23, 2025, Plaintiff filed the motion for default judgment which is presently before the Court. ECF No. 6. In April 2026, the Court issued an order scheduling oral argument on the motion for May 28, 2026, and directed Plaintiff to serve Defendant with the order. ECF No. 7. Plaintiff filed an affidavit on May 5, 2026 indicating that Defendant had been personally served with the order on April 27, 2026. ECF No. 8. The Court held oral argument on the motion on May 28, 2026 as originally scheduled, but only Plaintiff appeared. ECF No. 9. Defendant has yet to appear in this case.

## DISCUSSION

A clerk's entry of default does not lead to default judgment as a matter of right. *Shah v. N.Y. State Department of Civil Services*, 168 F.3d 610, 615 (2d Cir. 1999) (internal quotations omitted). Rather, "'[w]hen the party against whom the default or default judgment is entered is a *pro se* litigant, an additional consideration is at play, namely, a concern about the ability of *pro se* litigants to protect their rights.'" *Miller v. Cnty. of Erie*, No. 17-CV-00928W(F), 2019 WL 1244196, at *3 (W.D.N.Y. Feb. 27, 2019), *report and recommendation adopted*, No. 1:17-CV-00928 EAW, 2019 WL 1243680 (W.D.N.Y. Mar. 18,

2

2019) (quoting *Roberts v. Keith*, 2007 WL 2712853, at * 2 (S.D.N.Y. Sept. 18, 2007); *Enron Oil Corp. v. Diakuhara*, 10 F.3d 90, 96 (2d Cir. 1993)). Further, "[b]efore entering a default judgment, the court must ensure that (1) jurisdictional requirements are satisfied, (2) the plaintiff took all required procedural steps in moving for a default judgment, and (3) the plaintiff's allegations establish the defendant's liability as a matter of law." *Wilmington Sav. Fund Soc'y, FSB as trustee of Aspen Holdings Tr. v. Fernandez*, 712 F. Supp. 3d 324, 330 (E.D.N.Y. 2024) (citation omitted). Lastly, "[t]here must be an evidentiary basis for the damages sought by plaintiff . . . ." *Cement & Concrete Workers Dist. Council Welfare Fund v. Metro Found. Contractors, Inc.*, 699 F.3d 230, 234 (2d Cir. 2012) (citations omitted).

Here, Plaintiff has adequately demonstrated that there is no "good cause" for setting aside the entry of default against the *pro se* Defendant, that the Court has jurisdiction, that he took all required procedural steps in moving for a default judgment, that his allegations establish Defendant's liability as a matter of law, and that there is an adequate evidentiary basis for the damages requested. Accordingly, Plaintiff's motion for default judgment is granted.

## A. "Good Cause"

As no attorney has appeared on Defendant's behalf in this action, the Court must consider the *pro se* Defendant's ability to protect his rights, and whether there is "good cause" under Fed. R. Civ. P. 55(c) for setting aside the entry of default. *Miller*, 2019 WL 1244196 at *3. In making such determination, courts consider three factors: (1) willfulness on the part of the defaulting party, (2) prejudice to the adversary, and (3) the presentation of a meritorious defense. *Id.* (citing *Weitsman v. Levesque*, 2018 WL 1990218, at * 2 (N.D.N.Y. Apr. 25, 2018); *Niepoth v. Montgomery Cty. Dist. Attorney's Office*, 177 F.R.D.

3

111, 112 (N.D.N.Y. 1998)).

In the context of default, "willfulness" refers to the defaulting party's conduct "that is more than merely negligent or careless." *S.E.C. v. McNulty*, 137 F.3d 732, 738 (2d Cir. 1998). Here, Plaintiff has submitted a certificate of service indicating the Summons and Complaint were personally served on Defendant on October 20, 2025 (ECF No. 3), the docket indicates the Clerk mailed Defendant the entry of default on December 5, 2025 (ECF No. 5), and Plaintiff filed an affidavit of service indicating the text order scheduling oral argument was personally served on Defendant on April 27, 2026 (ECF No. 8). Nevertheless, to date Defendant has neither appeared in this action nor offered any explanation for failing to appear. The willfulness factor thus weighs in favor of a default judgment. *Miller*, 2019 WL 1244196 at *3.

Next, prejudice to the plaintiff in the default judgment context concerns "the loss of evidence, increased difficulties of discovery, or greater opportunity for fraud and collusion – circumstances that make it more difficult for plaintiff to prosecute its case." *Id.* (quoting *Roberts*, 2007 WL 2712853, at *5 (contrasting prejudice with "inconvenience and aggravation")). Here, the complete failure of Defendant to appear in this action renders Plaintiff unable to engage in any discovery with him. Accordingly, the second factor also supports a default judgment.

Lastly, with respect to the presentation of a meritorious defense, the Second Circuit has instructed that in considering whether a meritorious defense is presented, courts should determine whether such defense would "if proven at trial present a complete defense." *Diakuhara*, 10 F.3d at 98. Again, here, the complete failure of Defendant to appear or file an answer presenting any defense to Plaintiff's claims against him, can only

4

be construed as indicating Defendant has no defense which, if proven at trial, would require Defendant's exoneration on the claims pending against him. Accordingly, the third factor also weighs in favor of a default judgment against *pro se* Defendant.

With all three factors in favor of Plaintiff, Plaintiff has demonstrated that there is no "good cause" for setting aside the entry of default, or declining to award default judgment. Fed. R. Civ. P. 55(c).

### B. Jurisdiction

The complaint in the instant case alleges that the Court has "diversity jurisdiction" under 28 U.S.C. § 1332(a)(1), "in that the claims asserted [t]herein are between citizens of different states and the amount in controversy exceeds the sum or value of $75,000, exclusive of interests and costs." ECF No. 1 ¶ 2.

"[I]t is well established that [t]he party seeking to invoke jurisdiction under 28 U.S.C. § 1332 bears the burden of demonstrating that the grounds for diversity exist and that diversity is complete." *Van Wade v. Nitti*, 720 F. Supp. 3d 219, 229 (W.D.N.Y. 2024) (citing *Herrick Co., Inc. v. SCS Commc'ns, Inc.*, 251 F.3d 315, 322–23 (2d Cir. 2001)). Plaintiff has done so here. He alleges that he is a citizen and resident of Florida, while Defendant is a citizen and resident of New York. ECF No. 1 ¶¶ 4–5. Moreover, he seeks damages of $1,500,000, exclusive of interest and costs. ECF No. 1 at 3. Accordingly, the Court finds that it has jurisdiction in this matter.

### C. Procedural Steps

Default judgment is governed by a two-step process established in Rule 55 of the Federal Rules of Civil Procedure ("Fed. R. Civ. P."). *See* Fed. R. Civ. P. 55; *Priestly v. Headminder, Inc.*, 647 F.3d 497, 504–05 (2d Cir. 2011). The first step of the process

requires the moving party to obtain a certificate of default from the Clerk of the Court. Fed. R. Civ. P. 55(a). Once the certificate of default is issued, the moving party may move to the second step of the process: an application for entry of a default judgment. Fed. R. Civ. P. 55(b).

Here, as discussed above, Plaintiff has followed the proper two-step process. He obtained an entry of default on December 5, 2025. ECF No. 5. Only after obtaining the entry of default did he move to the second step: filing the instant motion for default judgment. ECF No. 6.

### D. Liability as a Matter of Law

Plaintiff's complaint alleges Defendant is liable and responsible for his injuries pursuant to the provisions of New York Navigation Law § 48. ECF No. 1 ¶ 15. N.Y. Nav. Law § 48(1) provides, in pertinent part, that

> Every owner of a vessel used or operated upon the navigable waters of the state . . . . shall be liable and responsible for death or injuries to person or property resulting from negligence in the use or operation of such vessel . . . by any person using or operating the same with the permission, express or implied, of such owner . . . .

N.Y. Nav. Law § 48.

"An allegation – other than one relating to the amount of damages – is admitted if a responsive pleading is required and the allegation is not denied." Fed. R. Civ. P. 8(b)(6). Where a default occurs, the well-pleaded factual allegations set forth in a complaint relating to liability are deemed true. *See Greyhound Exhibitgroup, Inc. v. E.L.U.L. Realty Corp.*, 973 F.2d 155, 158 (2d Cir. 1992). Therefore, in considering whether to enter default judgment, a court must determine whether the complaint contains sufficient factual matter, accepted as

true, to 'state a claim to relief that is plausible on its face.'" *Sky Vapors, LLC v. Blazynski*, 2018 WL 6696995, at * 2 (W.D.N.Y. Dec. 20, 2018) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). That is, the Court must consider whether the well-pleaded allegations can survive a motion to dismiss under Fed. R. Civ. P. 12(b)(6).

Here, Plaintiff alleges that Defendant was the owner of a vessel operated on Chautauqua Lake. ECF No. 1 ¶¶ 7–8. He further alleges that Chautauqua Lake consists of navigable waters located entirely within the State of New York, but that the waters are incapable of being used as an interstate highway for commercial trade or travel and is therefore non-navigable for purposes of establishing federal admiralty jurisdiction. *Id.* ¶¶ 9–10. Finally, he alleges that he was seriously injured due to the careless and negligent operation of Defendant's vessel by a person whom Defendant had given express or implied permission to operate that vessel. *Id.* ¶¶ 11–13. The Court finds these allegations are sufficient to state a claim for relief that is plausible on its face, and therefore establishes Defendant's liability as a matter of law.

**E. Damages**

Plaintiff seeks damages in the amount of $1,500,000 for his past and future pain and suffering. As one district court within this Circuit has aptly summarized:

> In New York, the term "pain and suffering" encompasses all items of general, non-pecuniary damages and includes the physical and emotional consequences of an injury. It also includes the loss of enjoyment of life which compensates for the frustration and anguish caused by the inability to participate in activities that once brought pleasure. The necessity of further surgery may exacerbate pain and suffering, while pain medication may alleviate it.

> Furthermore, damages for past and future pain and suffering must be distinguished. Past pain and suffering refers to damages from the date of the accident through trial, while future pain and suffering refers to damages that will reasonably occur thereafter. When considering future pain and suffering, such damages must be reasonably certain, but there is no requirement that they be permanent.

*Furey v. U.S.*, 458 F. Supp. 2d 48, 56 (N.D.N.Y. 2006) (internal citations and quotation marks omitted).

"'When determining the appropriate amount of damages for pain and suffering, [the Court] is bound by a standard of reasonableness.'" *McAdams v. U.S.*, 04-CV-6541, 2006 WL 1738028, at *8 (S.D.N.Y. June 22, 2006) (quoting *Mastrantuono v. U.S.*, 163 F. Supp. 2d 244, 258 (S.D.N.Y. 2001)). "Accordingly, courts look to awards in similar cases when determining appropriate damages for a plaintiff's pain and suffering." *Oncay v. Inflasafe USA, Inc.*, No. 819CV1428GTSCFH, 2021 WL 6202686, at *3 (N.D.N.Y. Oct. 20, 2021) (collecting cases).

Unlike allegations pertaining to liability, allegations in connection with damages are not deemed admitted in the context of a default judgment. *See Greyhound Exhibitgroup, Inc.*, 973 F.2d at 158. Indeed, "'while a default judgment constitutes an admission of liability, the quantum of damages remains to be established by proof unless the amount is liquidated or susceptible of mathematical computation.'" *Liberty Mut. Ins. Co. v. Fast Lane Car Serv., Inc.*, 681 F. Supp. 2d 340, 349 (E.D.N.Y. 2010) (quoting *Levesque v. Kelly Commc'ns, Inc.*, No. 91 CV 7045, 1993 WL 22113, at *4 (S.D.N.Y. Jan. 25, 1993); *Flaks v. Koegel*, 504 F.2d 702, 707 (2d Cir.1974)). "Although the 'court must ensure that there is a basis for the damages specified in a default judgment, it may, but need not, make the determination through a hearing.'" A district court may determine there is a sufficient

evidentiary basis for damages either based upon evidence presented at a hearing, or upon a review of detailed affidavits and documentary evidence. *Cement & Concrete Workers Dist. Council Welfare Fund*, 699 F.3d at 234.

Here, where Plaintiff has filed detailed affidavits and exhibits pertaining to his injuries, medical care, need for further surgery in the future, and the damages awarded by other courts for similar injuries, and where Defendant has not contested Plaintiff's submissions, the Court is satisfied that it can make an informed decision regarding his pain and suffering damages without an evidentiary hearing. *Liberty Mut. Ins. Co.*, 681 F. Supp. 2d at 349.

To begin with, Plaintiff himself submitted a declaration explaining how the accident happened, and the pain and suffering he has endured due to the accident. ECF No. 6-1. Plaintiff stated that while visiting a friend in New York in July 2024, he was invited to go tubing on Chautauqua Lake in a boat owned by Defendant. *Id.* ¶ 3. Plaintiff further stated that while he was in the water at the back of the boat preparing to go tubing, his friend put the boat into gear without warning and Plaintiff's left leg was struck by the boat's spinning propeller. *Id.* ¶¶ 5–6. Plaintiff began bleeding profusely and was in "excruciating pain," but was able to get back in the boat and apply a tourniquet to slow the bleeding. *Id.* ¶ 7.

Plaintiff was transported by helicopter to the University of Pittsburgh Medical Center-Hamot ("UPMC"), where he remained from July 27 to August 7, 2024. *Id.* ¶ 8. During that time, he experienced "terrible pain" and feared he would lose his leg. *Id.* He needed multiple blood transfusions, surgery and surgical hardware to repair factures in his leg and knee and attempt to repair nerve damage. *Id.* Plaintiff returned to Florida after

9

his discharge from UPMC, but had to be hospitalized again when his leg became infected. *Id.* ¶ 9. From August 14 to August 28, Plaintiff received inpatient care and underwent various surgical procedures at Memorial Regional Medical Center ("MRMC") to treat his infected leg. *Id.* After his discharge from MRMC, Plaintiff required physical therapy until early December 2024. *Id.* ¶ 10.

To this day, Plaintiff still suffers from "foot drop" in his injured leg, and needs to wear a brace to keep his foot in a neutral position. *Id.* ¶ 11. He walks with an altered gait, causing both hip and back pain and difficulty going up and down stairs. *Id.* He has pain, numbness, and tingling in his left lower leg that runs down to his toes. *Id.* In addition, Plaintiff has knee pain every day after standing or walking for any length of time, and gets frequent muscle cramps in his calf and shin. *Id.* Whereas Plaintiff used to run 3 to 5 miles several times a week, enjoy wake-boarding and snow-boarding, and operate a motorcycle, he can no longer do any of those things. *Id.* ¶ 12. Still just 33 years old, he struggles emotionally to adjust to the drastic change in his quality of life. *Id.* ¶ 13.

Plaintiff's declaration is supported by the declaration of Alan Hartstein, a doctor of podiatric medicine licensed by the Florida Board of Podiatric Medicine. ECF No. 6-8. Dr. Hartstein stated that he reviewed Plaintiff's medical records from UPMC and MRMC, and personally examined Plaintiff on November 19, 2025. *Id.* ¶¶ 3–4. Based on his records review and personal examination, Dr. Hartstein confirmed that while at UPMC, Plaintiff was diagnosed with and treated for acute extravasation within the popliteal fossa and lateral head of the gastrocnemius; acute lateral tibial plateau fracture with an angulated split component; acute mildly comminuted nondisplaced fibular head fracture; and deep lacerations. *Id.* ¶ 7. He also stated that his examination of Plaintiff "revealed that in

addition to permanent scarring, [Plaintiff] has a significant drop foot deformity on the left lower extremity due to the trauma he sustained on [July 27, 2024] with a complete transection of the common peroneal nerve." *Id.* ¶ 11. Thus, Dr. Hartstein opined that Plaintiff will need multiple surgical treatments in the future, including a tendon transfer and likely knee replacement. *Id.* He further opined that based upon a reasonable degree of medical certainty, Plaintiff's current condition and the contemplated medical treatments are causally related to the July 27, 2024 boat accident. *Id.* ¶ 13.

Lastly, Plaintiff's counsel submitted a declaration in support of Plaintiff's motion which contained, among other items, research he conducted regarding damages awarded in cases with injuries similar to those Plaintiff sustained. ECF No. 6-9. The first case, *Lewis v. Flushing Commons Property Owner, LLC, et al*, involved a 2018 New York jury award of $800,000 for past pain and suffering and $1,000,000 for future pain and suffering for a 35-year old ironworker who suffered a compound, complete transverse fracture of the distal region of his left fibula and tibia. ECF No. 6-13 at 2–3. The second case, *Karasu v. Security Auto Sales Inc., et al*, involved a 2022 New York jury award of $1,000,000 past pain and suffering and $1,000,000 future pain and suffering to a 40-year old roofer who broke his ankle, fibula, and tibia when he fell from a ladder on a worksite. ECF No. 6-13 at 4–5. Further, in his memorandum in support of the instant motion, Plaintiff identified an additional case in this Circuit, *Velasquez v. United States Postal Serv.*, 155 F. Supp. 3d 218 (E.D.N.Y. 2016), which not only involved a comparable damages award for past and future pain and suffering to a motorcyclist who sustained injuries to one of his legs similar to Plaintiff's, but also catalogued a number of other decisions from New York state courts, some of which included significantly higher pain and suffering damages than those sought

11

by Plaintiff for injuries that were arguably less severe. *See Velasquez*, 155 F. Supp. 3d at 230–31.

Based on the foregoing, the Court finds that an award of $750,000 in damages for past pain and suffering is reasonable. There is record evidence demonstrating that Plaintiff experienced excruciating pain from the accident itself; experienced the fear of losing his leg; suffered through multiple surgeries and procedures to save his leg, and repair his broken bones and nerve damage (and treat his subsequent infection); worked through prolonged physical therapy; and has endured the loss of many of the activities – such as running, wakeboarding, snow-boarding, and motorcycle-riding – that he once enjoyed.

Additionally, the Court finds that an award of an additional $750,000 for future pain and suffering is also reasonable. Plaintiff is now in his early 30s, which means he faces multiple decades dealing with the lifestyle changes imposed by his injuries, the chronic pain and muscle cramping he experiences after standing or walking, his "drop foot" and altered gait, and the probable additional surgeries he will have to undergo as discussed by Dr. Hartstein. *See, e.g., House v. Kent Worldwide Mach. Works, Inc.*, No. 02CIV2810RMBKNF, 2010 WL 11607350, at *6 (S.D.N.Y. June 18, 2010), *report and recommendation adopted as modified,* No. 02-CV-2810 (RMB)(KNF, 2010 WL 3025642 (S.D.N.Y. July 28, 2010) ("In determining an award for future pain and suffering, courts typically look to the nature of the plaintiff's injury and its future effect on his or her life, as well as the life expectancy of the plaintiff.").

## CONCLUSION

For the foregoing reasons, IT IS HEREBY

ORDERED that Plaintiff's motion for a default judgment [ECF No. 6] is granted, and he is awarded $750,000 for past pain and suffering, and $750,000 for future pain and suffering, for a total of $1,500,000; and it is further

ORDERED the Clerk of the Court is directed to enter a default judgment in Plaintiffs' favor against Defendant in the amounts set forth above.

SO ORDERED.

Dated:      June ____/____, 2026
            Rochester, New York

                                    ENTER:

                                    HON. MEREDITH A. VACCA
                                    United States District Judge

13